IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALAN AND SHELLY CANNADAY, on behalf
of their minor son, CHRISTOPHER CANNADAY,

      Plaintiffs,

v.                                                                                       CIV. NO. 04-01143 MV/WPL

BOARD OF EDUCATION OF THE RIO RANCHO
PUBLIC SCHOOLS, SUE CLEVELAND, in her
individual and official capacity; RICHARD
VONANCKEN, in his individual and official
capacity; ESTHER KEETON, in her individual and
official capacity; PUBLIC EDUCATION
DEPARTMENT OF THE STATE OF NEW MEXICO,

      Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL**
**DISCOVERY FROM DEFENDANT PUBLIC EDUCATION DEPARTMENT**

      Plaintiffs Alan and Shelly Cannaday filed a Motion to Compel Discovery from the Public Education Department of the State of New Mexico (NMPED) [docket no. 19]. The Cannadays seek to compel production of additional documents from the NMPED pursuant to Request for Production No. 8 and No. 9 and seek to require the NMPED to provide responsive answers to Interrogatories Nos. 1, 2, 3, 4 and 5. For the reasons that follow, this Order will grant in part and deny in part the Cannadays' Motion to Compel Discovery.

*Facts*

      The Cannadays filed suit against the Board of Education of the Rio Rancho Public Schools (Rio Rancho Schools) and three of its employees, and also against the NMPED. The Cannadays

contend that their child Christopher, a student with a diagnosis of pervasive developmental disorder, NOS (PDD) (*See Memorandum in Support of Plaintiffs' Motion to Compel*, p.2 [docket no. 20]) did not receive a free appropriate public education (FAPE) during the 2003-2004 school year. The Cannadays assert that the Rio Rancho Schools (a) improperly used and overused restraints on their child, (b) did not have any policies or procedures governing the use of restraints, and that the staff who restrained the child were not properly trained, (c) improperly relied on calling the police as a strategy for dealing with the child, and (d) did not have a continuum of placement for students with complex behaviors. The Cannadays assert that the NMPED was aware that the Rio Rancho Schools were not providing a FAPE for Christopher and failed to take appropriate action to ensure that the child received a FAPE.

The Cannadays requested a due process hearing under the Individuals with Disabilities Act (IDEA). The Due Process Hearing Officer (DPHO) found that the Rio Rancho Schools failed to provide the child with a FAPE during the 2003-2004 school year at the Lincoln Middle School and Desert Pathways placements. The DPHO ordered that compensatory education be provided to the child for the 2004-2005 school year and gave the Cannadays the option to renew it for the 2005-2006 school year. On appeal, the Administrative Appeal Officer (AAO) found the Rio Rancho Schools had provided a FAPE at Lincoln Middle School but had not provided a FAPE to the child at Desert Pathways. The AAO ordered that compensatory education be provided for the 2004-2005 school year.

The AAO found that the Rio Rancho Schools was not shown to be unable to establish and maintain a program of FAPE for Christopher and other students like him in the district (Complaint, ¶ 16). Both the DPHO and AAO found that the NMPED was not a proper party to the Cannadays'

case.[1] Dissatisfied with the decision of the AAO, the Cannadays filed suit under the IDEA, Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act (ADA), Title II, and under Section 1983 to remedy violations of the child's rights to substantive due process, liberty and equal protection.

*Discovery Against the NMPED Under the IDEA, Section 504, and Title II of the ADA*

The Cannadays claim that the NMPED failed to act to provide direct services to Christopher under the IDEA. The Cannadays also claim that the NMPED intentionally discriminated against Christopher to allow claims pursuant to Section 504 and Title II of the ADA. They claim that the discovery requested in their requests for production and interrogatories is relevant to these claims.

The IDEA confers upon disabled students an enforceable substantive right to receive an education that is both appropriate and free. *Honig v. Doe*, 484 U.S. 305, 310 (1988); *Murray v. Montrose County Sch. Dist.*, 51 F.3d 921, 925 (10th Cir. 1995). The IDEA also contains extensive procedural safeguards that guarantee that parents of disabled children have an opportunity for meaningful input into decisions that affect their children's education and the right to seek review of any decisions that they think are inappropriate. *Honig*, 484 U.S. at 311-12; *Murray*, 51 F.3d at 925. Under the IDEA, a school district must: (1) follow the procedures set forth in the IDEA; and (2) develop an individualized education program for the child through procedures reasonably calculated to enable the child to receive educational benefits. *Patricia P. v. Board of Educ.*, 203 F.3d 462, 467 (7th Cir. 2000). Under the IDEA, the State may step in to provide direct educational services to disabled students only in limited circumstances. *See* 20 U.S.C. § 1413(h)(1).

---

[1]The NMPED filed a Motion to Dismiss the Cannadays' Complaint, which is currently pending decision.

Section 504 of the Rehabilitation Act prohibits federally funded state and local agencies from discriminating against students with disabilities, while Title II of the ADA prohibits discrimination in public services furnished by governmental entities. *Swenson v. Lincoln County Sch. Dist. No. 2*, 260 F. Supp. 2d 1136, 1144 (D. Wyo. 2003). To state a claim under these statutes, a plaintiff must prove that: (1) he is a qualified individual with a disability; (2) he was excluded from the benefits or services of a public entity or otherwise was discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was because of his disability. *Id.* at 1144-45.

Rule 26 broadly allows discovery of any matter which is relevant to the subject matter of the case "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). A court's decision to limit or deny discovery "rests on a balancing of various factors: the requester's need for the information from this particular source, its relevance to the litigation at hand, the burden of producing the sought-after material; and the harm which disclosure would cause to the party seeking to protect the information." *Burka v. United States Dep't of Health and Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996). A court may deny the request for discovery entirely, or may limit the conditions, time, place or topics of discovery or the manner in which the material will be disclosed. *Id.*; FED. R. CIV. P. 26(c).

Concerning the Cannadays' IDEA claim, the district court must " independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings." *Murray*, 51 F.3d at 927. The parties do not cite any cases concerning discovery against a state educational authority under the IDEA, Section 504, or Title II of the ADA.

*Request for Production No. 8 and No. 9:* These requests for production seek "all state complaints filed since January 1, 2000, which allege problems concerning provision of special education to a student whose qualifying disability includes autism or another IDEA disability eligibility where the student has a diagnosis in the autism spectrum (ASD, nonverbal LD, Asperger's)" and the NMPED responses to these complaints. Although it raised various objections to providing this information, the NMPED produced reports of action taken in response to complaints filed on behalf of children with disabilities that could be characterized as within the autism spectrum (*See NMPED Memorandum in Opposition to Plaintiff's Motion to Compel Discovery*, p. 2 [docket no. 23]). The Cannadays assert that the NMPED improperly limited the scope of its response to children with disabilities within the autism spectrum disorder, and that the NMPED did not produce the complaints that were made and the other documents in the NMPED file (*i.e.*, correspondence with school districts and documents concerning "corrective action" to resolve violations).

I find that Requests for Production No. 8 and No. 9 are overboard and seek information that is not reasonably calculated to lead to the discovery of admissible evidence. This case involves a single child with a specific disability, in a single school district, with an alleged problem in one school year. It is difficult to understand how claims made on behalf of children with other disabilities in other school districts across the State will lead to the discovery of admissible evidence in this case. However, as limited by the NMPED in its Response, I believe that the Cannadays are entitled to the actual complaints filed on behalf of children with disabilities that could be characterized as within the autism spectrum and are not limited to only the reports of action taken

by the NMPED. The NMPED shall produce such complaints to the Cannadays, although the NMPED

may delete the names of the children and school districts involved.

*Interrogatories Nos. 1, 2, 3 and 4:* These interrogatories seek information on the NMPED's implementation of direct special education and related services to children with disabilities as specified in 20 U.S.C. § 1413(h)(1) and 34 C.F.R. § 300.360(a). The direct use of IDEA funds by the NMPED is authorized if the NMPED determines that a school district (a) fails to provide information necessary to establish eligibility to receive IDEA funds, (b) "is unable to establish and maintain programs of free appropriate public education that meet the requirements of" the IDEA, (c) is unable or unwilling to be consolidated with one or more local school districts in order to establish and maintain such programs, or (d) has one or more children who can best be served by a regional or state program or service-delivery system designed to meet the needs of such children. 20 U.S.C. § 1413(h)(1)(A)-(D).

I find that these interrogatories are overboard and seek information that is not reasonably calculated to lead to the discovery of admissible evidence. Although the Cannadays appear to claim that the NMPED should have provided direct services under 20 U.S.C. § 1413(h)(1)(B) because the Rio Rancho Schools were unable to establish and maintain a program of FAPE for Christopher that met the requirements of the IDEA , their interrogatories are not limited to this factual scenario and request information on all other scenarios that could allow the NMPED to provide direct services to children. *See* 20 U.S.C. § 1413(h)(1) (B)-(D). Even as to the claim that the NMPED should have provided services because the Rio Rancho Schools were unable to establish and maintain a FAPE for Christopher, there is no showing that the Rio Rancho Schools were unable to do so, and the AAO specifically found to the contrary. Further, there is no showing that the Cannadays gave notice to the NMPED pursuant to the complaint procedure outlined in 34 C.F.R. §§ 300.660-300.662 that the Rio Rancho Schools were denying Christopher a FAPE, or that NMPED ever concluded that the Rio

Rancho Schools were unable or unwilling to do so.

Finally, the interrogatories are not limited to a reasonable time period and are not limited to requesting information in cases that are at least somewhat analogous to the situation presented in this case. As noted above, this case involves a single child with a specific disability, in a single school district, with an alleged problem concerning the provision of special education services in one school year.

*Interrogatory No. 5:* Interrogatory No. 5 seeks information about the provision of technical assistance or direct monetary contributions since 2000 by the NMPED to local school districts to assist the local school district in provision of special education to a particular student or group of students. For the reasons set out above, this interrogatory is also overbroad and is not reasonably calculated to lead to the discovery of admissible evidence.

IT IS THEREFORE ORDERED that the NMPED shall supplement its response to Request for Production No. 8 to include the actual complaints filed on behalf of children with disabilities that could be characterized as within the autism spectrum. The Cannadays' Motion to Compel Discovery from the NMPED is denied in all other respects.

IT IS SO ORDERED.

                                                      WILLIAM P. LYNCH
                                                     UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served on the date of entry--via mail or electronic means--to counsel of record and any *pro se* party as they are shown on the Court's docket.