IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALAN and SHELLY CANNADAY, on
behalf of their minor son, CHRISTOPHER
CANNADAY,

      Plaintiffs,                                       No.  04-1143 MV/RLP

vs.

BOARD OF EDUCATION OF THE RIO
RANCHO PUBLIC SCHOOLS, SUE
CLEVELAND, in her individual and official
capacity; RICHARD VONANCKEN, in his
individual and official capacity; ESTHER
KEETON, in her individual and official
capacity; PUBLIC EDUCATION
DEPARTMENT OF THE STATE OF NEW
MEXICO,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant New Mexico Public Education Department's Motion to Dismiss, **[Doc. 3]**, filed November 5, 2004.  The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well taken in part and will be **GRANTED in part and DENIED in part**.

## BACKGROUND

On September 1, 2004, Plaintiffs Alan and Shelly Cannaday ("Cannadays") filed a Complaint against Defendants alleging that they violated various provisions of 18 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), and the New Mexico Tort Claims Act. The Cannadays bring the Complaint on behalf of their son, Christopher

Cannaday ("Christopher"), a child suffering from autism. Christopher qualifies for special educational benefits based on his disability. During all times relevant to the Complaint, Christopher was enrolled in the Rio Rancho Public Schools.

On February 24, 2004, the Cannadays filed a request for an IDEA Due Process hearing with the Public Education Department of the State of New Mexico ("PED") and the Rio Rancho Public School District ("District") as parties. The PED appointed an impartial due process hearing officer ("DPHO") to hear claims against the District, but refused to hear claims against the PED. At the hearing itself, the DPHO entered an order denying the Cannadays' request to exercise jurisdiction over their claims against the PED. On May 28, 2004, the DPHO entered a final decision finding that the District failed to provide Christopher with a "free appropriate public education" ("FAPE"), as required by the IDEA, during the 2003-2004 school year at Lincoln Middle School and Desert Pathways.

The District appealed the decision. On August 1, 2004, the Administrative Appeal Officer ("AAO") assigned to the case entered a final decision finding the following: (1) the PED was not a proper party to Plaintiffs' action; and (2) the District had provided a FAPE to Christopher at Lincoln Middle School, but not at Desert Pathways. The decision included specific provisions for Christopher's education during the 2004-2005 school year.

Plaintiffs allege that the PED, as a State Education Agency ("SEA"), is the entity that supervises state Local Education Agencies ("LEAs") in New Mexico and, in certain circumstances, may itself may be directly responsible for educating students with disabilities under the IDEA. As required by the IDEA, Plaintiffs allege that they have exhausted their administrative remedies against the PED. In their Complaint, Plaintiffs make the following specific

-2-

claims against the PED:

1. During the 2003-2004 school year and at all material times, Defendants, including the PED, failed to have any appropriate policy, rules, guidelines, training and supervision for the use of physical restraint in public schools and the use of police intervention in public schools specifically as it related to the needs of students with disabilities (Comp. ¶ 32);

2. During the 2003-2004 school year and before, the PED was aware that Christopher and students across the State of New Mexico with similarly complex behavioral needs were not being provided with appropriate educational placements by Rio Rancho Public Schools and other New Mexico school districts (Comp. ¶ 36);

3. The PED intentionally discriminated against Christopher and other similarly-situated students by failing to provide appropriate educational placements (Comp. ¶ 37);

4. The PED, despite its knowledge that districts across New Mexico, including the Rio Rancho School District, did not offer an appropriate placement to students in the autism spectrum, failed to take action consistent with its obligations under the IDEA to ensure provision of a FAPE to Christopher during the 2003-2004 school year and at the present time (Comp. ¶ 38);

5. During the 2003-2004 school year, the PED denied Christopher a FAPE (Comp. ¶ 40);

    6.      During the 2003-2004 school year, the PED denied Christopher a public education free from discrimination on the basis of disability (Comp. ¶ 41);

    7.      During the 2003-2004 school year, Defendants denied Christopher access to educational opportunities and access to public education consistent with that offered his non-disabled peers (Comp. ¶ 42).

## STANDARDS OF REVIEW

### A.    Motion to Dismiss Pursuant to Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides in relevant part that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading. FED. R. CIV. P. 12(b)(6). The Court may not dismiss a cause of action under Rule 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his or her claim that would entitle him or her to relief. *See, e.g.*, *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989). When considering a motion to dismiss, the Court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *See Housing Auth. of the Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir. 1991). The issue in reviewing the sufficiency of a complaint "is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claim." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)). These deferential rules,

however, do not allow a court to assume that a plaintiff "can prove facts that [the plaintiff] has not alleged or that the defendants have violated the...laws in ways that [the plaintiff has not] alleged." *See Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### B. Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Thus, a plaintiff bears the burden of establishing subject matter jurisdiction in a case, and the court presumes lack of jurisdiction until the plaintiff proves otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A motion to dismiss a case pursuant to Rule 12(b)(1) challenges a federal court's subject matter jurisdiction over an action. A 12(b)(1) motion is appropriate when plaintiff has failed to exhaust administrative remedies that are a prerequisite to plaintiff's suit. *See Honig v. Doe*, 484 U.S. 305, 326-27 (1988) (failure to exhaust administrative remedies under the IDEA before bringing a civil action in federal court deprives the court of subject matter jurisdiction over the action).

## DISCUSSION

The PED states that Plaintiffs' claims against it can be grouped into three categories: (1) an appeal under the IDEA and the Rehab Act of the decision that the PED was not required to participate in the due process hearing on a FAPE for Christopher and the administrative appeal of that decision; (2) a claim under § 1983 for denial of Christopher's substantive due process rights under the Fourteenth Amendment; and (3) claims under the IDEA, the ADA, and the Rehab Act for alleged failures on the part of the PED to provide a FAPE to Christopher and other similarly-

situated students.

The PED argues that the first two claims should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). The PED argues that the final claim should be dismissed pursuant to Rule 12(b)(1) for Plaintiffs' failure to exhaust their administrative remedies against it. Plaintiffs oppose the motion.

## I.      A Background on the IDEA

The IDEA seeks to ensure that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A).[1] Providing a FAPE is achieved through the development of an individualized education program ("IEP"), tailored for each child with a disability. 20 U.S.C. § 1414(d)(1)(A).

Under the IDEA, a FAPE must provide disabled children with meaningful access to the educational process. *See Board of Educ. v. Rowley*, 458 U.S. 176, 192 (1982) ("[I]n seeking to provide ... access to public education, Congress did not impose upon the States any greater substantive educational standard than would be necessary to make such access meaningful."). Meaningful access dictates that a disabled child must be provided educational benefits in the least restrictive and most appropriate environment, with the child participating, to the extent possible, in the same activities as non-disabled children. 20 U.S.C. § 1412(a)(5)(A). The IDEA does not

---

[1] Under the IDEA, disabled children include children: (i) with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (hereinafter referred to as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and (ii) who, by reason thereof, need special education and related services. 20 U.S.C. § 1401(3)(A).

require, however, a school district to provide a disabled child with the best possible education. *See Rowley*, 458 U.S. at 192.

Under the IDEA, states must "establish and maintain procedures ... to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of" a FAPE in return for receiving federal funding.  20 U.S.C. § 1415(a).  The IDEA specifies what procedures must be established, including "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6).  Upon filing a complaint, a parent is entitled to an impartial due process hearing to be conducted either by a state or local educational agency.  20 U.S.C. § 1415(f)(1).  If the local agency holds the hearing, then the parent may appeal to the state educational agency, which must "conduct an impartial review."  20 U.S.C. § 1415(g).  A "party aggrieved by the findings and decision" in the due process hearing who cannot appeal to the state educational agency or a party aggrieved by the findings and decision of the state educational agency on appeal may seek judicial review.  20 U.S.C. § 1415(i)(2)(A).

**II.      Do Plaintiffs State a Claim Against the PED Based on the Due Process Hearing Officer and Administrative Appeal Officer's Denial to Join the PED as a Party?**

The IDEA's regulations "[a]re binding on each public agency in the State that provides special education and related services to children with disabilities, regardless of whether that agency is receiving [IDEA] funds," including the SEA, LEAs, and other state agencies and schools. 34 C.F.R. § 300.2(b)(2); *accord* N.M. ADMIN. CODE tit. 6, § 31.2.2.[2]  The SEA has the

---

[2] New Mexico's implementation of the IDEA provides:

overall responsibility for insuring that the IDEA provisions are met and that "all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency" are under the general supervision of, and meet the standards of, the SEA. 20 U.S.C. § 1412(a)(11)(A)(ii); 34 C.F.R. § 300.600(a); *Bitsilly ex rel. Denet-Yazzie v. Bureau of Indian Affairs*, 253 F. Supp. 2d 1257, 1264 (D.N.M. 2003).

To enforce the procedural requirements set forth in the IDEA, the parent or guardian of a disabled child may present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6) (emphasis added). Such a complaint may be brought against any "public agency," which is defined under the IDEA as follows:

> As used in this part, the term public agency includes the SEA [state education agency], LEAs [local educational agencies] or ESAs [educational service agencies], public charter schools that are not otherwise included as LEAs or ESAs and are not a school of an LEA or ESA, and any other political subdivisions of the State that are responsible for providing education to children with disabilities.

34 C.F.R. § 300.22.

The PED argues that as New Mexico's SEA, it is not directly responsible for providing educational services under the IDEA and therefore is not a proper party to a due process hearing under the Act. As such, the PED argues that Plaintiffs' claim that the DPHO and AAO erred in

---

> The requirements of these rules are binding on each New Mexico public agency that has direct or delegated authority to provide special education and related services, regardless of whether that agency is receiving funds under the [IDEA] and regardless of whether it provides special education and related services directly, by contract or through other arrangements such as referrals by the agency to private schools or facilities.

N.M. ADMIN. CODE tit. 6, § 31.2.2.

failing to join it as a party should be dismissed. From its review of the Complaint, the Court does not believe that Plaintiff has made such a claim.

In their Complaint, Plaintiffs state they appeal the IDEA administrative decisions on the following bases: (1) portions of the AAO's decision "are not supported by the facts or the law and the decision should be reconsidered on its merits based on applicable law and the appropriate standard of review"; (2) both hearing officers failed "to adequately address issues raised concerning school district personnel's use of physical restraint and how the use of physical restraint impacts the delivery of [FAPE] guaranteed by federal and state law"; (3) both hearing officers failed "to adequately address issues raised concerning school district personnel's reliance on police intervention, including arrest of the child, as a strategy for meeting the education needs of New Mexico students with disabilities"; (4) both hearing officers failed "to adequately address issues raised concerning the systemic, statewide absence of educational placement options for New Mexico students who have disabilities within the autism spectrum including pervasive developmental disorder resulting in complex behaviors"; and (5) the AAO's failure to apply the appropriate burden of proof and standard of administrative appeal review for an IDEA due process administrative appeal.

Nowhere in their Complaint do Plaintiffs state that they are specifically appealing the decision that the PED was not a proper party to the due process hearing. Plaintiffs appear to concede as much in their reply brief. They state that while they disagree with the PED's analysis of its obligations to participate in the administrative due process, "whether NMPED is subject to IDEA administrative due process is irrelevant to 12(b)(6) dismissal of Plaintiffs' IDEA claims against NMPED." Pltf. Mtn. at 3. The Court interprets Plaintiffs' reference to "claims" to signify

the substantive IDEA claims they recited in their Complaint.

If, however, Plaintiffs are attempting to make such a claim, it should be dismissed. The Court has found no authority for the proposition that the PED or some such similar agency is an indispensable party at a due process hearing. Similarly, the Court has found no authority for the proposition that the IDEA does not contemplate a due process hearing with the SEA as a party, as Defendants argue. Certainly, SEAs have been sued and held responsible for IDEA violations. *See Bitsilly*, 253 F. Supp. 2d at 1264 ("[I]n most instances, parents of students bring IDEA lawsuits against the school or the local educational agency where the school is located, rather than the SEA. However, parents do have the option of suing at the highest level of accountability, the SEA."); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 952 (4th Cir. 1997) (noting that "both the language and the structure of IDEA suggest that either or both entities [the SEA and the LEA] may be held liable for the failure to provide a free appropriate public education, as the district court deems appropriate after considering all relevant factors"); *St. Tammany Parish Sch. Bd. v. Louisiana*, 142 F.3d 776, 783-84 (5th Cir. 1998) (agreeing with the reasoning in *Gadsby*); *Kruelle v. New Castle County Sch. Dist.*, 642 F.2d 687, 696-97 (3rd Cir. 1981) (rejecting the State Department of Education's argument that it functioned "solely as a supervisory agency" and therefore should not be held responsible under IDEA, finding, to the contrary, that Congress intended the SEA to be the "central point of accountability").

Even if the SEA can be a party to a due process hearing, Plaintiffs are unable to state a claim that can be remedied by the Court. It is unclear how the failure to join the PED as a party violated Plaintiffs' rights under the IDEA. It is similarly unclear how that failure circumvented the procedural requirements of the IDEA. Finally, it is unclear how this violation, if it is a violation,

properly could be remedied by the Court.  For these reasons, any claim that the hearing officers erred by not joining the PED will be dismissed.

### III.     Do Plaintiffs State a Claim Against the PED Under 18 U.S.C. § 1983?

To support a claim for relief in an action brought under § 1983, Plaintiffs must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.  *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  Section 1983 actions, however, are limited by several immunity doctrines.

The Eleventh Amendment bars suits against non-consenting states.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974).  The Amendment further bars suits seeking monetary, equitable, and injunctive relief against any "arm" of the state.  *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  State agencies are considered "an arm of the state for Eleventh Amendment purposes." *Hensel v. Office of the Chief Admin. Hearing Officer*, 38 F.3d 505, 508 (10th Cir. 1994).  As a state agency, then, the PED is immune from Plaintiffs' claims.

Thus, for Plaintiffs to prevail in their § 1983 action, they must demonstrate that the State of New Mexico waived immunity or Congress specifically abrogated Eleventh Amendment immunity.  Plaintiffs cannot do so.  *See* N.M. STAT. ANN. § 41-4-4(F); *Quern v. Jordan*, 440 U.S. 332, 341 (holding that Congress' passage of § 1983 was not intended to abrogate Eleventh Amendment immunity); *Ellis v. University of Kansas Med. Center*, 163 F.3d 1186, 1196 & n.13 (10th Cir. 1998).  Moreover, Plaintiffs may not bring claims against the PED under § 1983 because the PED is not a "person" within the meaning of the statute.  *See Will v. Mich. Dep't of*

*State Police*, 491 U.S. 58, 71 (1989); *Tafoya v. Bobroff*, 865 F. Supp. 742, 752 (D.N.M. 1994), *aff'd*, 74 F.3d 1250 (10th Cir. 1996). Plaintiffs' § 1983 claims against the PED must be dismissed.

### IV. Did Plaintiffs Exhaust their Administrative Remedies Against the PED With Regard to Their IDEA, ADA, and Rehab Act Claims?

It is well-settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court. This exhaustion requirement is extended to apply to actions under other federal laws whenever the relief sought is also available under the IDEA:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (citations omitted). "[The] IDEA's mandate is explicit: plaintiffs must exhaust IDEA's impartial due process hearing procedures in order to bring a civil action under subchapter II of IDEA or any 'such law[ ] seeking relief that is also available' under subchapter II of IDEA." *Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 53 (1st Cir. 2000); *see also Cudjoe v. Independent Sch. Dist. No. 12*, 297 F.3d 1058, 1063 (10th Cir. 2002) ("We believe that both the language and the policy of the IDEA suggest that if a student with a disability seeks to bring a claim for educational injuries, then he must plead and show either that he has exhausted his administrative remedies under the IDEA or that the relief he is seeking is not available under the IDEA."). "This exhaustion prerequisite cannot be circumvented by recasting what is in essence an

IDEA claim as some other cause of action." *Pardini v. Allegheny Intermediate Unit*, 280 F. Supp. 2d 447, 456 (W.D. Penn. 2003).

The exhaustion provision of the IDEA serves several purposes: (1) permitting the exercise of agency discretion and expertise on IDEA issues; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error. *Association for Cmty. Living v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993); *see also Cudjoe*, 297 F.3d at 1064 ("As part of the bargain of providing children with educational rights and parents with procedural safeguards to protect those rights, Congress required that parents turn first to the statute's administrative framework to resolve any conflicts they had with the school's educational services."). Because "the IDEA's statutory exhaustion requirement is jurisdictional in nature," a court must satisfy itself that jurisdiction exists before moving to the merits of the claim. *Falzett v. Pocono Mtn. Sch. Dist.*, 150 F. Supp. 2d 699, 701 n.2.

Exhaustion is not required, however, when administrative remedies would be futile, when they would fail to provide relief, or when "'an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law.'" *Romer*, 992 F.2d at 1044 (quoting H.R. REP. NO. 296, 99th Cong., 1st Sess. at 7 (1985)).

Plaintiffs argue that exhaustion of their claims against the PED would have been futile because the hearing officers refused their request to join the agency in the due process hearing. In response, the PED argues that Plaintiffs have not exhausted their administrative remedies and that their suit is premature. Specifically, the PED argues that Plaintiffs must file a Complaint pursuant

to the State Complaint Review Procedure ("CRP") *after* it is determined that "the Rio Rancho School District is not fulfilling, or cannot fulfill, its judicially-determined obligations" before bringing a civil action against it.

### A. Were Plaintiffs Required to Utilize the CRP Before Bringing Their Claims Against the PED in Federal Court?

Under 34 C.F.R. §§ 300.660 through 300.662, states must adopt a written CRP for receiving and resolving complaints that the state or local agency is violating the IDEA or its regulations. This process is separate from the IDEA due process procedure. As a matter of first impression in this District, the Court holds that Plaintiffs were not required to utilize the CRP before bringing their claims against the PED in federal court. This conclusion is supported by the decisions of several other courts, which have found that the CRP, formerly known as "EDGAR," is "not an adequate alternative to exhausting administrative remedies under the IDEA." *Romer*, 992 F.2d at 1045 (citation omitted); *see also Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1095 (1st Cir. 1989) (finding that because plaintiff did not pursue an administrative remedy other than the initial EDGAR complaint, the federal court had jurisdiction over the IDEA case only if it fell under one of the exceptions to the exhaustion doctrine); *Weber*, 212 F.3d at 53 ("The case law confirms that state and federal complaint procedures other than the IDEA due process hearing do not suffice for exhaustion purposes. Even the CRP procedures (formerly known as EDGAR), which implement IDEA, are 'not an adequate alternative to exhausting administrative remedies under IDEA.'").

In *Porter v. Board of Trustees of Manhattan Beach Unified School District*, 307 F.3d 1064, 1070 (9th Cir. 2002), the Ninth Circuit considered the question of whether the plaintiff's parents had to exhaust California's CRP procedure before bringing an action in federal court. In

proceedings below, the district court had accepted the defendants' argument that plaintiffs had to exhaust the CRP procedure, without specifically finding that Congress intended such exhaustion. The court concluded that the district judge erred: "Although there is some merit in encouraging resort to the CRP to allow [the state] to correct problems before litigation and to further develop administrative records for judicial review, we conclude that the district court erred in basing its exhaustion determination on a policy analysis independent of the IDEA's requirements." *Id*. at 1070.

In reaching this conclusion, the court reasoned that where Congress sets forth a detailed exhaustion scheme, as it did in the IDEA, "courts generally lack discretion to add additional exhaustion requirements to the scheme." *Id*. at 1070. Requiring aggrieved parties to go through the CRP process, then, "would add an additional step of administrative exhaustion not contemplated by the IDEA." *Id*. at 1071. Other circuits agree. In *Mrs. W. v. Tirozzi*, 832 F.2d 748, 758 (2d Cir. 1987), the court explained that § 1415(f), which describes the IDEA's due process procedure, "does not specify, directly or by incorporating its legislative history, exhaustion of possible CRP remedies. In fact, research has unearthed no statute or regulation that requires exhaustion of CRP remedies prior to commencing" an IDEA action. *See also Megan C. v. Independent Sch. Dist.*, 57 F. Supp. 2d 776, 790 (D. Minn. 1999) ("[F]or a court to find that a party has exhausted 'the elaborate administrative scheme established by the Act' it is not imperative that said party have resorted to both the CRP procedures as well as the impartial due process procedures set forth in § 1415(g).").

Significantly, the U.S. Department of Education itself has never interpreted its CRP regulations as creating a mandatory step before suit alleging an IDEA violation. *See Porter*, 307

F.3d at 1072. This is because the CRP procedures always have been "distinguished from the specific administrative procedures detailed in the [IDEA] itself." *Christopher W.*, 877 F.2d at 1090 n.2. While the CRP may be an alternative means to enforce provisions of the IDEA, it is a different process that does not provide the mandatory procedural protections available under the IDEA. Moreover, while the CRP will notify the accused party of the "alleged violations and afford it an opportunity to correct the alleged error, ... , it [does] not further any of the other purposes of the exhaustion requirement." *Romer*, 992 F.2d at 1045 (citation omitted). Thus, the Court rejects the PED's argument that the CRP is a prerequisite step to filing a suit against an agency in federal court. As such, Plaintiffs' claims cannot be dismissed on that basis.

> **B.     By Attempting to Join the PED as a Party at the Due Process Hearing, Have Plaintiffs Exhausted their Administrative Remedies?**

The next issue for the Court to consider is whether Plaintiffs have exhausted their administrative remedies against the PED.

The record demonstrates that exhaustion of administrative remedies in this case would have been futile. Plaintiffs requested a due process hearing with the PED as a party without success. On appeal, the AAO affirmed this decision. Plaintiffs clearly wanted to establish an administrative record and give the PED "an initial opportunity to ascertain and alleviate the alleged problem." *Padilla v. School Dist. No. 1*, 233 F.3d 1268, 1274 (10th Cir. 2000). This proved impossible, however. *See Christopher W.*, 877 F.2d at 1095 (an exception to the exhaustion requirement includes cases in which further agency proceedings may be futile). Hence Plaintiffs had no recourse but to seek judicial relief.

It is incongruous for the PED to argue that Plaintiffs have not exhausted their administrative remedies on the one hand, while at the same time maintaining that it is not a proper

party to a due process hearing, even though the IDEA contemplates SEA liability for the failure to provide a FAPE. *See Thompson v. Board of Special Sch. Dist. No. 1*, 936 F. Supp. 644, 648 (D. Minn. 1996), *aff'd*, 144 F.3d 574 (8th Cir. 1998); *Hornstine v. Township of Moorestown*, 263 F. Supp. 2d 887, 902-3 (D.N.J. 2003) (finding exhaustion of administrative remedies futile where the Department of Education "rebuffed" plaintiff's attempts to obtain a due process hearing because it believed it did not have jurisdiction under the IDEA); *Kerr Ctr. Parents Ass'n v. Charles*, 897 F.2d 1463, 1470 (9th Cir. 1990) (excusing exhaustion requirement on futility grounds where the school district refused to provide a hearing). Moreover, Plaintiffs should not be required to exhaust a second time when the hearing officers have made clear that they do not believe the PED is a proper party to a due process hearing. Accordingly, the PED's motion to dismiss on exhaustion grounds with regard to Plaintiffs' IDEA claims is denied.

        1.     *ADA and Rehab Act Claims*

With regard to Plaintiffs' ADA and Rehab Act claims, it is well-settled that they must either show that they exhausted their remedies under the IDEA or that the relief they are seeking is not available under the IDEA. *Cudjoe*, 297 F.3d at 1063. The Tenth Circuit has adopted a broad construction of "available" relief to mean "relief that a plaintiff may seek even though he or she may first have to go through the administrative procedures required by the statute, including requesting that a child be evaluated for eligibility." *Id*. at 1066. "The dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." *Id*. (quoting *Padilla*, 233 F.3d at 1274).

The IDEA focuses on "the appropriateness of the public education afforded special needs students whereas both the Rehabilitation Act and the ADA focus on disability-based

discrimination against special needs students and are intended to reach grosser kinds of misconduct than the IDEA." *Hornstine*, 263 F. Supp. 2d at 901 (citation and quotations omitted). In their Complaint, Plaintiffs make clear that at least one of their claims is based on discrimination unrelated to Christopher's educational placement (Comp. ¶ 47). Because such a claim is not provided for in the IDEA, Plaintiffs therefore are not required to exhaust administrative remedies before bringing it in federal court. *See O'Hayre v. Board of Educ. for Jefferson County*, 109 F. Supp. 2d 1284, 1294 (D. Colo. 2000).

Plaintiffs' other ADA and Rehab Act claims are "educational in nature" and seek relief available under the IDEA. As such, the Court's finding that Plaintiffs have exhausted their remedies under the IDEA by requesting a due process hearing applies to these claims as well. Accordingly, Plaintiffs' ADA and Rehab Act claims will not be dismissed for lack of jurisdiction.

## CONCLUSION

For the reasons stated above, **IT IS THEREFORE ORDERED** that the PED's Motion to Dismiss **[Doc. No. 3]** is hereby **granted in part and denied in part** as follows:

(1)  Plaintiffs' IDEA claim against the PED based on the refusal to join the PED as a party or exercise jurisdiction over it at the due process hearing, assuming such a claim was made, is hereby dismissed for failure to state a claim upon which relief can be granted;

(2)  Plaintiffs' § 1983 claim against the PED is hereby dismissed for failure to state a claim upon which relief can be granted;

(3)  The PED's motion to dismiss Plaintiffs' substantive IDEA, ADA, and Rehab Act claims pursuant to Rule 12(b)(1) is denied.

**DATED** this 12th day of July, 2005.

```
_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE
```

<u>Attorneys for Plaintiffs</u>
Gail Stewart
Tara Ford

<u>Attorneys for Defendants</u>
Jerry A. Walz
Kurt Wihl